291 F.Supp. 242 (1968)
Orlando CEPEDA, Plaintiff,
v.
SWIFT & COMPANY
and
Wilson Sporting Goods Company, a Corporation, Defendants.
No. 67 C 378(3).
United States District Court E. D. Missouri, E. D.
August 7, 1968.
*243 John C. Healy, and Alan E. Popkin, St. Louis, Mo., for plaintiff.
Harold A. Thomas, Jr., Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., for Swift & Co.
John P. Emde, St. Louis, Mo., for Wilson Sporting Goods Co.

MEMORANDUM OPINION AND ORDER
REGAN, District Judge.
All parties have filed motions for a summary judgment.[1] As appears infra, we sustain defendants' motions and deny plaintiff's.
Orlando Cepeda is a professional baseball player in the celebrity category. He seeks actual and punitive damages for the allegedly "unauthorized use of his name, photograph, reputation and signature" for advertising purposes. The material facts bearing upon the issue of liability are not in dispute.
Wilson Sporting Goods Company is a manufacturer of baseballs and other sporting goods. Swift & Company is a wholesale meat processor. A division of Swift, St. Louis Independent Packing Company, markets bacon and franks under the brand name "Mayrose."
Admittedly, Cepeda entered into a contract with Wilson dated April 30, 1963, granting it "the exclusive right and license to manufacture, advertise and sell baseballs, baseball shoes, baseball gloves and baseball mitts identified by his name, facsimile signature, initials, portrait, or by any nickname popularly applied to him, and to license others so to do." The contract required Wilson to pay Cepeda a royalty of 10 cents per dozen on Cepeda-identified baseballs sold by Wilson or its licensees, and different amounts on the other products covered by the contract, with a maximum of $1000 per year[2] on total royalties payable to plaintiff. Although the payments to Cepeda have never reached the maximum in any one year, there is no question as to the fact that Wilson has made all payments due Cepeda under the contract and the renewals thereof.
A quantity of "official Orlando Cepeda baseballs" bearing Cepeda's facsimile signature were manufactured by Wilson and sold to Brown-Flatt Incentives which in turn resold the baseballs to Swift & Company (or to Swift's advertising agency acting on Swift's behalf). Wilson has conceded that at the time these baseballs were manufactured and sold it had knowledge not only that Brown-Flatt Incentives intended to sell the baseballs to or on behalf of Swift or its agents, but that the baseballs would be offered for sale to the general public through an advertising campaign conducted on behalf of Swift by its advertising agency (through which advertising campaign the general public would be advised that the baseballs in question could be purchased for the sum of $1.00 each together with a label or coupon from a product manufactured by Swift). Wilson agreed to provide appropriate copy and pictures of plaintiff for use by Swift. The advertising campaign was in fact conducted, and more than 12,000 baseballs were sold by Swift in the manner contemplated.
*244 On the theory that one picture is worth a thousand words, we reproduce one of the advertisements of which plaintiff complains and which is fairly representative of all.

Swift's television and radio advertisements, which have also been considered on the motions for summary judgment, are not essentially different. The following is a typical radio advertisement:
"The baseball season gets more exciting every day * * * just about as exciting as the offer you'll find on the specially marked packages of MAYROSE BACON and MAYROSE *245 FRANKS! That's right * * * MAYROSE is offering an Orlando Cepeda autograph baseball for just $1.00 and the words `SPECIAL OFFER' from a package of MAYROSE FRANKS or MAYROSE BACON! The Orlando Cepeda baseball is official size and weight, with cork and rubber center, anchored and balanced winding and hand-stitched, genuine horsehide cover. And remember * * these wonderful Orlando Cepeda autograph baseballs are just $1.00 each with the words `SPECIAL OFFER' from a package of MAYROSE FRANKS or MAYROSE BACON! These baseballs make great souvenirs for all of the baseball fans in the family, so get plenty for everyone. And, the whole family will enjoy sweet, tender MAYROSE BACON and juicy, flavorful MAYROSE FRANKS. Just look for the specially marked packages of MAYROSE BACON and MAYROSE FRANKS the next time you shop * * * enjoy the finest * * MAYROSE * * * and get your Orlando Cepeda autograph baseballs."
Neither defendant questions the right of Cepeda to whatever commercial value there may be in the use of his name, portrait and reputation. See Munden v. Harris, 153 Mo.App. 652, 134 S.W. 1076, to the effect that no one may appropriate the commercial value in the use of another's name, picture or reputation without his consent. All parties start with the basic premise that this so-called "right of publicity" is a valuable property right which may not be violated with impunity, but which may be bargained away. See for example, Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc., 2 Cir., 202 F.2d 866, 868, and Sharman v. C. Schmidt & Sons, Inc., D.C.Pa., 216 F.Supp. 401, 407.
The issue here is whether the use of plaintiff's name, picture and reputation admittedly made by Swift was authorized by Cepeda's contract with Wilson. Initially, Cepeda argues that under the contract Wilson had no right to license a meat processor (Swift)[3] to advertise and sell the baseballs, on the theory that since Wilson is known to the public as a maker and seller of sporting goods and not as a premium house or promotion agent, the "reasonable interpretation" of the contract phrase "license others so to do" is that the only "others" Wilson could license to sell Cepeda baseballs are sporting goods retailers.
"In interpreting the contract we must be guided by the well-established rules that we cannot make contracts for the parties or insert provisions by judicial interpretation. We are to determine what the parties intended by what they said, and we cannot be concerned with what they might have said, or with what they perhaps should have said." Brackett v. Easton Boot and Shoe Company, Mo., 388 S.W.2d 842, 847. To interpret the contract as plaintiff urges would be to make a new contract for the parties, there being no language therein which restricts Wilson in its dealings to sporting goods retailers. The contract contains no restriction whatsoever against Wilson or its licensees using or selling Cepeda baseballs as "advertising premiums." We must give effect to the contract as written.
*246 Plaintiff's basic contention is that the sole right he gave Wilson to use and license the use of his name and fame was "in connection with" baseballs and other designated baseball paraphernalia, and that defendants had no right to use his name "in connection with" meat products. However, the words "in connection with" are not contained in the contract.
Cepeda argues that Swift's major purpose was to increase its sales of hot dogs and bacon, and that the baseballs were "a mere vehicle to convey purchasers to defendant Swift's products", or, stated otherwise, that "plaintiff's reputation, goodwill, popularity and signature were being used as bait to lure his fans to defendant Swift's products."
The contract does not in any way restrict or limit either the method of merchandising the baseballs or the manner in which they may be advertised or sold. And the method actually used by Swift to sell the Cepeda-identified baseballs was reasonably calculated to assure that a substantial number of such baseballs would be sold. The more baseballs Swift purchased and sold, the more royalties Cepeda would receive, up to the contract maximum.
What Cepeda is really contending is that a merchant who sells or advertises Cepeda-identified baseballs must completely divorce such sales and advertisements from the sale or advertisement of all other products handled by him. Carried to its logical conclusion, Cepeda's argument would preclude even a sporting goods retailer from advertising Cepeda baseballs in conjunction with other sporting goods.
Granting that Swift's purpose in selling Cepeda baseballs was to promote its meat products, the fact is that Cepeda's name and portrait were used only to accurately describe and advertise the baseball bearing his name. And although a label from a Swift meat product was a part of the purchase price demanded of those who wished to purchase the baseball, it is nevertheless true that what Swift was actually selling were baseballs.
It is a matter of common knowledge that merchants advertise well-known products at cost or less for the purpose of "luring" customers into the advertisers' places of business where they might be expected to purchase not only the well-known products being used as "bait", but also other items as well. So, too, merchants frequently advertise a well-known product at an attractive price, subject to the customer making a purchase of a specific dollar amount of other merchandise, the purpose being, of course, to "lure" the customer into buying such other merchandise by means of the "bait".
We see no impropriety, under the contract, in Swift's similar utilization of Orlando Cepeda baseballs for the purpose of increasing its dollar volume of sales of meat products. That Swift chose to insist upon proofs-of-purchase of one of its products as a condition of its sales of the baseballs at a reduced price did not exceed the scope of its license. This is true even though the more Cepeda baseballs Swift was able to sell in this manner, the more (or so it can be assumed) Swift's meat products would also be sold to enable the baseball customers to obtain the necessary labels to be used as part of the purchase price.
A careful examination of Swift's advertisements convinces us that the thrust thereof was to persuade the public to purchase Cepeda-identified baseballs and thereby increase Swift's sales of meat. Nothing in the advertisements would normally persuade a customer who had no interest in a Cepeda baseball to purchase any Swift meat product simply because the advertisements displayed plaintiff's name and portrait. In no sense of the word was the name or reputation of plaintiff used to promote or endorse the meat products as such. Cf. O'Brien v. Pabst Sales Co., 5 Cir., 124 F.2d 167, cert. denied 315 U.S. 823, 62 S.Ct. 917, 86 L.Ed. 1220.
*247 In other words, it is clear that only those individuals who were desirous of purchasing Cepeda-identified baseballs would be induced by the advertisements to purchase Swift meat products, and they would do so solely because of the necessity of obtaining proofs-of-purchase to acquire what they really desired, namely, the Cepeda-identified baseballs.
Had Swift's advertisements merely offered the Cepeda-identified baseballs at an attractive price as a gesture of good will, without any requirement that a proof-of-purchase from a Swift product accompany the order, such use of the baseballs to improve Swift's public image and thereby indirectly increase its meat sales would differ only in degree from the use actually made.
In any event, there is no provision in the contract which precluded Swift from tieing-in the sale of Cepeda-identified baseballs to Swift meat products, in the sense that a prospective purchaser of a baseball was required to pay, as a part of the purchase price, a portion of a label from a meat product.
Inasmuch as the contract clearly authorized the sale of Cepeda baseballs by any method whatsoever, we do not believe that Swift's use of such baseballs as "bait" creates liability where none would otherwise exist.
It follows from the foregoing that having granted Wilson the right to manufacture, advertise and sell Orlando Cepeda baseballs and to license others to do so, with no restriction as to the method of resale, plaintiff is precluded from now complaining that the use of his name, picture and fame to identify the baseballs and promote their sale was unauthorized, even though the sales thereof were "in connection with" the sale of meat products in the manner used by Swift.
The use of plaintiff's name disclosed by the undisputed facts was within the authorization of the contract. There being no genuine issue as to the material facts, we hold that plaintiff is not entitled to recover. Accordingly, the motions of defendants for summary judgment are hereby sustained and the motion of plaintiff for summary judgment is overruled. The Clerk is directed to enter judgment in favor of defendants and against plaintiff.
NOTES
[1] Plaintiff's motion is for a partial summary judgment, the issue of damages to be determined by a jury.
[2] Originally the maximum was $500, but the contract was modified in 1965 to provide for the present figure.
[3] Plaintiff's memorandum questions the sufficiency of the record concerning Swift's status as a licensee of Wilson, on the assumption that there is no proof thereof other than a letter (written on behalf of Swift after suit was filed) purporting to "confirm" the fact that a license had been granted to Wilson. However, the answers to plaintiff's interrogatories tell of a meeting attended by representatives of Wilson, Brown-Flatt Incentives, Swift and the latter's advertising agency at which it was agreed that Wilson would provide and sell the Cepeda baseballs to Swift through Brown-Flatt Incentives for use in an advertising campaign by Swift. At that time Wilson verbally licensed Swift to advertise and sell the baseballs in the manner discussed, this being the license subsequently "confirmed" in writing. The contract contains no requirement that licenses be in writing.