Orlando CEPEDA, Appellant,

v.

**SWIFT AND COMPANY, a Corporation,
and Wilson Sporting Goods Company,
a Corporation, Appellees.**

No. 19475.

United States Court of Appeals
Eighth Circuit.

Sept. 23, 1969.

Alan E. Popkin, of Rosecan & Popkin, St. Louis, Mo., for appellant, John C. Healy, St. Louis, Mo., was on the brief with Mr. Popkin.

Harold A. Thomas, Jr., of Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., for appellee Swift & Co., Alphonso H. Voorhees, St. Louis, Mo., was on the brief with Mr. Thomas.

John P. Emde, of Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for appellee Wilson Sporting Goods Co., Fred Leicht, Jr., St. Louis, Mo., was on the brief with Mr. Emde.

Before VAN OOSTERHOUT, Chief Judge, and MEHAFFY and GIBSON, Circuit Judges.

MEHAFFY, Circuit Judge.

Orlando Cepeda, a citizen of Puerto Rico and a famous major league baseball player, brought this suit in state court against Swift and Company. Upon timely removal to federal court by Swift, Cepeda filed an amended complaint, joining as an additional defendant Wilson Sporting Goods Company. The action was grounded upon the asserted unauthorized use of plaintiff's name, likeness, photograph, signature and good will by Swift in an advertising campaign utilized by one of its divisions in the promotion of sales of meat products, namely Mayrose franks and bacon.

The complaint alleged that plaintiff has become a widely renowned athlete and, as a result, his right to associate his name through endorsement of products and in connection with promotions and sales of products is an asset of great value; that his right of privacy has been invaded and infringed by defendants in their unauthorized use of his name, photograph, etc.; that this unauthorized use has unjustly enriched defendant Swift; and that plaintiff is entitled to compen-

satory and punitive damages. In the second count of the complaint, plaintiff asserts that on April 30, 1963 he entered into an agreement with defendant Wilson through which Wilson acquired the right to use plaintiff's name, facsimile signature, initials, portrait, or any nickname popularly applied to him, in connection with the sale of baseballs, baseball shoes, baseball gloves and baseball mitts and to license others to do the same. The contract period was for two years with an option to renew for an additional period of one, two or three years. On March 29, 1965, defendant Wilson notified plaintiff of its execution of its option to renew for a period of two years. Plaintiff further alleged that in 1967 Wilson, in disregard of plaintiff's rights, entered into an agreement with Swift by the terms of which Wilson sold baseballs to Swift and agreed that Swift could conduct an advertising campaign employing plaintiff's name and picture with the promotion and sale of Swift's meat products.

Swift did not advertise that Cepeda endorsed its meat products but merely offered Cepeda baseballs at a special price to those forwarding with their order a specified portion of the wrapper from certain products. The campaign was carried out and employed extensively by radio, television, newspapers, magazines and other advertising media in Missouri, Illinois and elsewhere.[1] Plaintiff contends that the gist of Swift's advertising campaign was to associate plaintiff's name and good will inherent in it with defendant's products, asserting that Wilson at no time had his consent to use or assign his name in connection with the

promotion and sale of meat products. Plaintiff also sought compensatory and punitive damages from defendant Wilson.

The record consists of numerous interrogatories, exhibits, affidavits and motions by each of the parties for summary judgment. The district court in a memorandum opinion and order reported at 291 F.Supp. 242 (E.D.Mo.1968) sustained the motions of defendants for summary judgment, overruled plaintiff's motion, and entered judgment in favor of defendants. We affirm the judgment of the district court.

■■■ The propriety of summary judgment by the court on issues involving interpretation of the contract is not challenged by either party. Such use of a summary judgment is desirable where, as here, the contract is unambiguous. See Universal Fiberglass Corp. v. United States, 400 F.2d 926, 928 (8th Cir. 1968); Freeman v. Continental Gin Co., 381 F.2d 459, 465 (5th Cir. 1967).[2] Nor is it a matter of dispute that plaintiff has a valuable property right in his name, photograph and image and that he may sell these property rights. Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc., 202 F.2d 866 (2nd Cir. 1953), cert. denied, 346 U.S. 816, 74 S.Ct. 26, 98 L.Ed. 343 (1953); O'Brien v. Pabst Sales Co., 124 F.2d 167 (5th Cir. 1941), cert. denied, 315 U.S. 823, 62 S.Ct. 917, 86 L.Ed. 1220 (1942); Sharman v. C. Schmidt & Sons, Inc., 216 F.Supp. 401 (E.D.Pa.1963); Munden v. Harris, 153 Mo.App. 652, 134 S.W. 1076 (1911). Therefore, the sole issue presented by this appeal is whether the contract be-

---

1.  One of the advertisements is reproduced in the district court's opinion, 291 F. Supp. 242, 244 (E.D.Mo.1968).

2.  In Freeman v. Continental Gin Co., 381 F.2d 459, 465 (5th Cir. 1967), the court said:

    "If the writing were ambiguous, then summary judgment would be improper, for the intent of the parties would then be a genuine issue of material fact. (Citing cases.) But the preliminary question whether an ambiguity exists is not a question of fact and is for the court to decide. (Citing cases.) * * * The mere raising of an unfounded charge of ambiguity does not bar summary judgment, where the charge is disproven by undisputed documentary evidence. (Citing case.) 'Contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction.' Whiting Stoker Co. v. Chicago Stoker Corp., 171 F.2d 248, 250–251 (7 Cir., 1948)."

tween plaintiff and Wilson authorized the use of plaintiff's name and photograph in the manner in which they were used.

The pertinent part of the contract between plaintiff and Wilson reads as follows:

"1. Cepeda grants to Wilson the exclusive world right and license to manufacture, advertise and sell baseballs, baseball shoes, baseball gloves and baseball mitts identified by his name, facsimile signature, initials, portrait, or by any nickname popularly applied to him, and to license others so to do. During the term of this agreement Cepeda agrees not to grant any similar right or license to any other person, Cepeda shall sign all lawful documents which may be necessary to enable Wilson to secure federal, state or foreign registration of trade marks or trade names for products identified as herein provided."

The consideration for the contract was that Wilson should pay plaintiff a royalty of $1.00 per dozen on baseball catcher's or basemen's mitts, 60¢ per dozen on baseball gloves and 10¢ per dozen on baseballs sold by Wilson or its licensees, provided that the royalties should not be less than $50.00 per year nor more than $500.00 per year. When the contract was renewed, the maximum royalty was raised to $1,000 per year, but in no year have the royalties reached said maximum amounts. It is not in dispute that Wilson paid plaintiff all of the royalties for the Cepeda products manufactured and sold by it.

The thrust of plaintiff's argument is that the contract conveyed to Wilson the right to use his name only in connection with the sale of certain baseball products and that nowhere in the contract does plaintiff authorize his name to be used in connection with meat products or the promotion of meat products as was done here. We disagree. The contract plainly grants to Wilson the exclusive world right to manufacture, advertise and sell baseballs, baseball shoes, baseball gloves and baseball mitts identified by plaintiff's name, facsimile signature or picture, and the right to license others so to do. The contract nowhere contains any restriction on the manner in which baseballs could be advertised or sold. Plaintiff's argument is rooted in the concept that the intent of the parties was to restrict the advertising and sale of products. To accept plaintiff's interpretation of the contract would require a rewriting and the interpolation of words into the contract. This we cannot do when the language of the contract is so clear. The contract, being unambiguous as it is, needs no interpretation except to give the plain and simple words their plain and simple meaning. Mercantile Bank & Trust Co. v. The Western Cas. & Sur. Co., 415 F.2d 606. (8th Cir. Sept. 2, 1969); Kern v. Liberty Mut. Ins. Co., 398 F.2d 958, 960 (8th Cir. 1968); H. K. Porter Co. v. Wire Rope Corp., 367 F.2d 653, 660 (8th Cir. 1966); Omaha Public Power Dist. v. Employers' Fire Ins. Co., 327 F.2d 912, 916 (8th Cir. 1964); Community Federal Savings & Loan Ass'n v. General Cas. Co., 274 F.2d 620, 624 (8th Cir. 1960); Cross v. Ladue Supply, Inc., 424 S.W.2d 108, 110 (Mo.App.1967); Thurman v. K. L. Koenig Realty Co., 423 S.W.2d 196, 200 (Mo.App.1967). Contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction. Freeman v. Continental Gin Co., supra; Southern Const. Co. v. United States, 364 F.2d 439, 453, 176 Ct.Cl. 1339 (1966). Our function is to enforce the contract as made. Mercantile Bank & Trust Co. v. Western Cas. & Sur. Co., supra; Brackett v. Easton Boot & Shoe Co., 388 S.W.2d 842, 847 (Mo.1965); Monterosso v. St. Louis Globe-Democrat Pub. Co., 368 S.W.2d 481, 487 (Mo. 1963), cert. denied, 375 U.S. 908, 84 S.Ct. 198, 11 L.Ed.2d 147 (1963).

■ It is perfectly clear to us that plaintiff contracted with Wilson and granted to it the exclusive world right and license to manufacture, advertise and sell baseballs. Wilson was also authorized to contract its rights to others and

this is exactly what was done in this case. We further find that Swift did not exceed the authority granted to it by Wilson. The advertising material that Swift used was an offer to sell Orlando Cepeda baseballs for only $1.00 with the words "Special Offer" taken from a package of Mayrose franks or bacon. A number of the advertisements contained a picture of plaintiff in his baseball uniform either swinging a bat or catching a ball along with a picture of the baseball offered, a picture of the Mayrose products, and an explanation of the "Special Offer." However, as hereinbefore mentioned, a survey of all the advertisements reflects that Swift did not in any fashion attempt to indicate that plaintiff used or endorsed its meat products but simply offered for sale Cepeda baseballs for $1.00 when accompanied with a portion of the wrapper from one of its meat products.

We find that the interpretation of the contract by the district court is correct and that the defendants did not exceed their contractual authority.

The judgment of the district court is affirmed.