# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-2184

JUNE TONEY,

*Plaintiff-Appellant,*

v.

L'OREAL U.S.A., INC., THE WELLA
CORPORATION, and WELLA PERSONAL
CARE OF NORTH AMERICA, INC.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 3002—**Ronald A. Guzman**, *Judge.*

_____

ARGUED APRIL 8, 2004—DECIDED SEPTEMBER 21, 2004

_____

Before KANNE, EVANS, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.*

## I. Background

In November 1995, June Toney, a model who has ap-
peared in print advertisements, commercials, and runway
shows, authorized Johnson Products Company to use her
likeness on the packaging of a hair-relaxer product called

"Ultra Sheen Supreme" from November 1995 until November 2000. In addition, Toney authorized the use of her likeness in national magazine advertisements for the relaxer from November 1995 until November 1996. Additional uses (e.g., promotion of other products and/or for extended time periods) were contemplated by the agreement, but, as specifically stated in the agreement, the particular terms for any such uses were to be negotiated separately.

In August 2000, L'Oreal U.S.A., Inc. acquired the Ultra Sheen Supreme line of products from Carson Products company, which had previously acquired that same product line from Johnson. Subsequently, in December 2000, The Wella Corporation ("Wella") purchased and assumed control of the line and brand from L'Oreal.

In her complaint filed in state court, Toney asserted that L'Oreal, Wella, and Wella Personal Care of North America, Inc. (collectively, "Defendants") used her likeness in connection with the packaging and promotion of the Ultra Sheen Supreme relaxer product beyond the authorized time period. Specifically, she claimed that the Defendants thereby violated (1) her right to publicity in her likeness as protected under the Illinois Right of Publicity Act, 765 Ill. Comp. Stat. 1075/1, *et seq.* (2003) ("IRPA"), and (2) the Lanham Trademark Act of 1946, 15 U.S.C. § 1125(a).

The case was properly removed to federal district court on the basis of federal question jurisdiction. Following the Defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court found that the IRPA-based claim met the conditions set out in § 301 of the Copyright Act ("Act"), 17 U.S.C. § 301, and was therefore preempted. Toney later voluntarily dismissed her Lanham Act claim with prejudice and the case was closed. She now appeals the district court's preemption determination. For the reasons stated herein, we affirm.

## II. Analysis

The question presented by this appeal can be stated simply: is Toney's claim, brought under the IRPA, preempted by the Copyright Act? We review this legal question de novo, as well as the district court's ultimate decision to grant the Defendants' motion to dismiss. *See Stevens v. Umsted*, 131 F.3d 697, 700 (7th Cir. 1997).

The IRPA allows an individual the "right to control and to choose whether and how to use an individual's identity for commercial purposes." 765 Ill. Comp. Stat. 1075/10. Moreover, the IRPA provides that "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person . . . or their authorized representative." 765 Ill. Comp. Stat. 1075/30.

However, § 301 of the Copyright Act[1] delineates two conditions which, if met, require the preemption of a state-law claim, such as one brought under the IRPA, in favor of the rights and remedies available under the Act.[2] First, "the

---

[1]　Section 301(a) states:

On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

[2]　We note that even if a work is too minimal or lacking in originality to qualify for Federal copyright, so long as it meets the requirements of § 301, states are nonetheless prevented from protecting the work. *See Baltimore Orioles, Inc. v. Major League*

(continued...)

work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in § 102." *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986). Second, "the right must be equivalent to any of the rights specified in § 106." *Id.*

### A. Section 102 condition

Section 102 of the Act defines the subject matter of copyright as "original works of authorship fixed in any tangible medium of expression," such as "pictoral" works. 17 U.S.C. § 102(a). The Act's definitional section, § 101, explains that a work is "fixed" in a tangible medium of expression "when its embodiment in a copy . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101. It cannot be disputed that Toney's likeness in photographic form is an original work and fixed in tangible form (as no one photo of Toney is exactly like another, aside from duplicates produced from negatives, both of which are permanent and able to be perceived). Section 101 also states that pictoral works include photographs. *Id.* Therefore, the photographs of Toney's likeness are the subject matter of copyright. *See Baltimore Orioles*, 805 F.3d at 674-76. The § 102 condition is met.

Toney's sole substantive argument on appeal is one never previously offered: she asserts that her IRPA claim is actually directed at the Defendants' use of her "identity," as compared to her likeness fixed in photographic form.

---

[2] (...continued)
*Baseball Players Ass'n*, 805 F.2d 663, 676 (7th Cir. 1986) (citing H.R. Rep. No. 1476, 94th Cong., 2d Sess. 131, *reprinted in* U.S. Code Cong. & Ad. News 5659, 5747) ("House Report")).

(Appellant's Opening Br. at 19-21). But the word "identity" appears nowhere in her complaint. *See Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993) ("[A] plaintiff cannot amend [her] complaint by a brief that [she] files in the . . . court of appeals."). Moreover, in her response to the Defendants' motion to dismiss before the district court, she expressly stated that her claim "is narrowly directed to the use of her likeness, captured in photograph or otherwise." (R. 13 at 4.) Because Toney did not argue in any pleading before the district court that her "identity" could serve as a basis for relief under the IRPA and/or to avoid preemption under § 301 of the Copyright Act, she is barred from making such an assertion now. *Bell v. Duperrault*, 367 F.3d 703, 708 n.1 (7th Cir. 2004) (citing *Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002) ("A party waives any argument that it does not raise before the district court . . . .")).

   Since Toney's appellate argument with respect to the § 102 condition has been waived, we will spend a brief moment addressing the argument she advanced before the district court (but omitted from her briefs to this court). Specifically, in her memorandum opposing the Defendants' motion to dismiss, she emphasized that her IRPA claim is based upon her right of publicity in her *likeness*, as distinguished from her *likeness in photographic form*. (R.13 at 4.) However, this is contrary to our earlier *Baltimore Orioles* decision, which held that the content of the right of publicity (here, Toney's likeness, in that case, the plaintiff-baseball players' likenesses and performances in baseball games) is within the subject matter of copyright. *Baltimore Orioles*, 805 F.2d at 669 n.7, 674-76, *cited generally in ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996); *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848-49 (2d Cir. 1997); 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 2.09[F] (1999). For the purposes of a § 301 preemption analysis, *Baltimore Orioles* in essence obviated the distinction between the content of publicity rights and

the artistic—and thus obviously copyrightable—product resulting from the photographic (or filmic) recording of someone's likeness (or performance). *See Baltimore Orioles*, 805 F.2d at 674-76; *Nat'l Basketball Ass'n*, 105 F.3d at 848-49 ("The Copyright Act should not be read to distinguish between [game broadcasts and the underlying games] when analyzing the preemption of a misappropriation claim based on copying or taking from the copyrightable work. . . . Copyrightable material often contains uncopyrightable elements within it, but Section 301 preemption bars state law misappropriation claims with respect to uncopyrightable as well as copyrightable elements."). *But see* 1 Nimmer, § 1.01[B][1][c] (criticizing *Baltimore Orioles* and stating that just because a likeness is embodied in a copyrightable work, such as a photograph or film, does not make the likeness itself a work of authorship within the subject matter of copyright), *quoted in Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003-04 (9th Cir. 2001); *Brown v. Ames*, 201 F.3d 654, 658-59 (5th Cir. 2000).

At this juncture, particularly given that Toney chose not to bring a breach of contract action and did not anywhere suggest that we should reconsider *Baltimore Orioles* (in fact, as discussed below she quotes one particularly troublesome passage of that decision and asks us to apply it), we decline to do so. In light of *Baltimore Orioles*, we must treat Toney's IRPA claim as based upon her right to publicity in her likeness in photographic form, and, as we stated above, such is within the subject matter of copyright and the § 102 condition is met.

Avoiding the general holding of *Baltimore Orioles* we summarized above, Toney narrowly focused on footnote 24 of the opinion. In it, the *Baltimore Orioles* court stated (within the context of its broader discussion of the § 102 condition) that "[a] player's right to publicity in his name or likeness would not be preempted if a company, without the consent of the player, used the player's name to advertise

its product." *Baltimore Orioles*, 805 F.2d at 676 n.24. Admittedly, a casual reading of that language does seem to support Toney's proposition that her likeness is not within the subject matter of copyright, does not meet the § 102 condition, and that consequently, her IRPA claim should not be preempted.

Toney is mistaken. First, the very holding of *Baltimore Orioles* belies Toney's interpretation. As we explained above, *Baltimore Orioles* held that the content of the right of publicity (i.e., Toney's likeness) is within the subject matter of copyright. Second, the *Baltimore Orioles* court cited *Cepeda v. Swift & Co.*, 415 F.2d 1205, 1206 (8th Cir. 1969), in support of the aforementioned proposition. *Cepeda* was decided in 1969 and § 301 of the Copyright Act did not take effect until January 1, 1978. Hence, only implied pre-emption could have possibly been at issue in that case. But *Cepeda* did not consider any preemption issue at all, implied or otherwise. In fact, the *Cepeda* court construed the right to publicity/privacy claims as a run-of-the-mill contract dispute. *Id.* at 1206-07 (expressly stating that the sole issue presented on appeal was whether the defendants breached the terms of contract which authorized only limited use of the plaintiff-athlete's name and likeness). Therefore (and also given that Toney does not advocate revisiting the overall holding in *Baltimore Orioles*), we understand the *Baltimore Orioles* court's reading of *Cepeda* to mean only that a common law contract action may or may not be preempted (under § 301 or otherwise), and that a case-by-case preemption analysis is necessary. This interpretation is consistent with our conclusions in the instant case.

## B. Section 106 condition

Section 301 also requires a showing that the right to be enforced (here, Toney's right to publicity in her likeness in photographic form) is "equivalent to any of the rights specified in § 106." *Baltimore Orioles*, 805 F.2d at 674. The

notes and commentary accompanying § 106 make it clear that the section gives copyright holders five exclusive and fundamental rights: reproduction, adaptation, publication, performance, and display.[3] 17 U.S.C. § 106. A copyright is violated or infringed when a party, other than the copyright holder, exercises, without permission, one of these fundamental rights. A right defined under state law is equivalent to one of the "bundle of rights" listed in § 106 if it is violated by an act which, in and of itself, would also amount to copyright infringement. *Baltimore Orioles*, 805 F.2d at 677. Put differently, to avoid preemption, a state law must regulate conduct qualitatively distinguishable from that governed by federal copyright law—i.e., conduct other than

---

[3] Section 106 states:

[T]he owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

reproduction, adaptation, publication, performance, and display. *Id.* at 677-78 n.26; *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 659-60 (4th Cir. 1993) (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 200-01 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985); 1 Nimmer § 1.01[B][1]).

Some courts use an "elements test" to determine whether the conduct regulated under the state law is different from that specified in § 106—if the state law requires elements beyond those necessary to prove copyright infringement, then the state law is not preempted. *Nat'l Basketball Ass'n*, 105 F.3d at 850; *Trandes*, 996 F.2d at 659-60. But one cannot simply call every word in a state statute (or otherwise extracted from state common law) an "element" and conclude that the statute includes "extra elements" and should not be preempted. Rather, as we stated above, the focus of a § 106 inquiry is whether the right protected under the state law addresses conduct qualitatively different from that which the Copyright Act speaks to. For example, both contract law and the law of frauds address conduct—such as breach and misrepresentation, respectively—distinguishable from the conduct regulated under the Copyright Act. *Cf.* House Report at 132, *reprinted in* 1976 U.S.C.C.A.N. at 5748 (unaffected by § 301 are causes of action under common law, such as privacy, publicity, trade secrets, and defamation and fraud, "that contain elements such as invasion of privacy or a breach of trust or confidentiality, that are *different in kind* from copyright infringement.").

In this case, Toney's right of publicity in her likeness in photographic form protected under the IRPA is qualitatively indistinguishable from the rights enumerated in § 106 of the Copyright Act. Toney's right to publicity prohibits the unauthorized reproduction, adaptation, publication, or display of her photos. But, Toney does not hold the copyright

in those photos—the photographer (and by agency law his employer—here, the Carson Products Company) is the copyright holder. *See Baltimore Orioles*, 805 F.2d at 667-73 (applying "works made for hire" doctrine of 17 U.S.C. § 201(b) to conclude that defendant baseball teams own the copyright in telecasts of major league baseball games). And because the exercise of the Carson Products Company's rights to reproduce, adapt, publish, or display the photos would also infringe upon Toney's right to publicity in her likeness in photographic form, her publicity right is equivalent to the rights encompassed by copyright listed in § 106. *See id.* at 679. Regardless of who holds the copyright in her photos, the bottom line is that no meaningful distinction can be made between the publicity rights Toney seeks to protect under the IRPA and the rights protected by copyright law.

In closing, we emphasize that Toney has attempted to obtain in this litigation that which could have been sought through a breach of contract action. In light of our *Baltimore Orioles* decision—which Toney does not challenge—we are left only to speculate as to why such an action was not brought against the Defendants, which would have most likely avoided these copyright preemption issues.

## III.  Conclusion

For the foregoing reasons we AFFIRM the district court's dismissal of Toney's Illinois Right of Publicity Act claim.

No. 03-2184 11

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*