Dean LETO and Rhonda J. Leto, Plaintiffs,

v.

RCA CORPORATION (now known as Thomson Inc.), Wal–Mart Stores, Inc., and Sears, Roebuck and Co., Defendants.

No. 04 C 4514.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 27, 2004.

Order Denying Reconsideration
Oct. 26, 2004.

Donald L. Johnson, Johnson Law Firm, Joseph Thomas Gentleman, Attorney at Law, Chicago, IL, for Plaintiffs.

Peter Charles McCabe, III, Danielle A.R. Coffman, Winston & Strawn LLP, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

MORAN, Senior District Judge.

Plaintiffs Dean and Rhonda Leto brought this action against defendants RCA Corporation (now Thomson, Inc.), Wal–Mart Stores, Inc., and Sears, Roebuck and Co., alleging a claim for violation of the Illinois Right of Publicity Act, 765 ILCS 1075/15, and a common law claim for misappropriation of name or likeness for commercial purposes. Plaintiffs filed their complaint in state court, but defendants had it removed to the federal court and filed a motion to dismiss. In response, plaintiffs seek to remand the case to the state court. The motion to remand is granted and therefore we do not have jurisdiction to consider the motion to dismiss.

## BACKGROUND

The following facts, taken from plaintiffs' complaint, are, for purposes of these motions, accepted as true. In 2000, plaintiffs, a brother and sister, went to Kings Island Amusement Park in Ohio, where they rode a roller coaster together. The following year, in Cook County, Illinois, Dean discovered that a photograph of him and his sister riding a roller coaster was on the side of an RCA television box. Surprised by his discovery, Dean investigated whether the picture was on other RCA televisions. After Dean found the picture on televisions for sale in several stores, including Wal–Mart and Sears, he informed his sister Rhonda, who was living in Arizona. Rhonda found the picture on RCA televisions sold in Arizona Wal–Marts as well. While in Wal–Mart and Sears stores in the fall of 2003, Dean and Rhonda discovered that the picture of them still appeared on RCA televisions. Plaintiffs deny giving any of the defendants consent to use their name or likeness.

On June 3, 2004, plaintiffs filed a two-count complaint in the Circuit Court of Cook County, Illinois, alleging that the defendants' use of their likenesses without written consent violated the Illinois Right of Publicity Act and constituted a common law tort of misappropriation.[1] On July 8, 2004, defendants filed a joint petition to

---

1. Several courts have observed that in the Seventh Circuit "the right of publicity is

remove the case to federal court, where we now consider plaintiffs' motion to remand and defendants' motion to dismiss.

## DISCUSSION

■■■ Before considering defendants' motion to dismiss, we must first determine whether this action was properly removed to federal court. When a federal court is considering a motion to remand, the party seeking to preserve removal of the case from state court has the burden of establishing federal jurisdiction. *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993); *Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir.1976)("It is well established that the burden is on the party seeking to remove to establish his right and the case should be remanded if there is doubt as to the right of removal in the first instance."). In their notice of removal, defendants state that removal of this action was proper because § 301(a) of the Copyright Act, 17 U.S.C. § 301(a), completely preempts plaintiffs' state law claims. They maintain that original and exclusive jurisdiction over plaintiffs' claims rests in the United States District Courts pursuant to 28 U.S.C. § 1338.[2] In their motion to remand, plaintiffs argue that the Copyright Act does not preempt their right of publicity claims.

■■■ Defendants may remove a state court civil action to federal court if the claim arises under federal law. *Fedor v. Cingular Wireless Corporation*, 355 F.3d 1069, 1071 (7th Cir.2004)(citing *Beneficial National Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003)). Generally, however, a plaintiff may avoid

federal court by pleading only state law claims because the well-pleaded complaint rule holds that "a case will not be removable if the complaint does not affirmatively allege a federal claim." *Fedor*, 355 F.3d at 1071. The Letos did not allege a federal claim. Nonetheless, defendants maintain that this action was properly removed to federal court due to an exception to the well-pleaded complaint rule.

■■■ The Supreme Court has recognized two circumstances in which state claims can be removed to federal court: when Congress expressly allows it, or "when a federal statute wholly displaces the state-law cause of action through complete preemption." *Beneficial National Bank*, 539 U.S. at 8, 123 S.Ct. 2058. The Seventh Circuit explains: "Where a federal statute completely preempts the state-law cause of action, the claim, although pleaded in terms of state law, is in reality based on federal law, and therefore the claim is removable under 28 U.S.C. § 1441(b)." *Fedor*, 355 F.3d at 1071(citing *Beneficial*, 539 U.S. at 8, 123 S.Ct. 2058). Congress has not expressly allowed for removal in these circumstances, so there must be complete preemption to justify removal.

■■■ Preemption of a party's state law claim is not equivalent to complete preemption of a state law cause of action. Preemption is a federal defense to a state law claim. *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). "As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal

equivalent to the right to use a person's name or likeness," *see e.g., Glovaroma, Inc. v. Maljack Productions, Inc.*, 1998 WL 102742 at *6 (N.D.Ill.1998), thus we use right of publicity and misappropriation of name or likeness interchangeably.

2. "The district courts shall have original jurisdiction of any civil action arising under an Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases." 28 U.S.C. § 1338(a).

court." *Id.* It is only the doctrine of complete preemption that has the "preemptive force of federal law" to surmount the well-pleaded complaint rule and convert a state law complaint into a complaint alleging a federal claim. *See Briarpatch Limited, L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 304 (2d Cir.2004)(citing *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)).

Both parties believe that the dispositive question for this motion is whether the Letos' state law right to publicity claims are preempted by the Copyright Act under Seventh Circuit precedent. As indicated above, the answer to that question is not dispositive, for even if the claims are preempted, that alone would not give defendants a basis for removal—only a defense to the claims. In *Beneficial National Bank,* the Supreme Court considered whether an action alleging common law usury against a national bank was properly removed to federal court. 539 U.S. at 3–4, 123 S.Ct. 2058. According to the Court, the dispositive question in their inquiry was: "Does the National Bank Act provide the exclusive cause of action for usury claims against national banks?" *Id.* at 9, 123 S.Ct. 2058. Likewise, the central question regarding the Letos' motion to remand is: Does the Copyright Act provide the exclusive cause of action for claims of misappropriation of name or likeness? In *Beneficial National Bank,* the Supreme Court answered the dispositive question affirmatively, noting that the provisions of the National Bank Act, the Court's historical interpretation of the Act, and the special nature of federally-chartered banks, supported the holding that the Act completely preempted all other usury actions against national banks. The Copyright Act, on the other hand, does not provide an exclusive cause of action for misappropriation of name or likeness claims. Though misappropriation of identity claims may in certain cases be preempted by the Copyright Act, *see e.g., Baltimore Orioles v. Major League Baseball Players Ass'n,* 805 F.2d 663 (7th Cir.1986); *Toney v. L'Oreal U.S.A., Inc.,* 384 F.3d 486 (7th Cir.2004), neither language in the Copyright Act nor Seventh Circuit precedent supports a finding that the Act completely preempts these claims.

 Defendants rely on *Briarpatch Limited v. Phoenix Pictures, Inc.,* 373 F.3d 296 (2d Cir.2004), to support their contention that the Copyright Act does completely preempt plaintiff's right of publicity claims. Building on the Supreme Court's analysis of complete preemption in *Beneficial National Bank,* the Second Circuit found that "the district courts have jurisdiction over state law claims preempted by the Copyright Act." *Id.* at 305. In other words, preemption by the Copyright Act is no longer just a defense to state law claims brought in state court, but is now a basis for removal. Even if we accept the Second Circuit's finding, it does not justify removal of the Letos' case.

The Copyright Act preempts a state law claim when two conditions apply: 1) the work giving rise to the plaintiff's claim falls within the subject matter of copyright, and 2) the rights protected by the state law claim are equivalent to one of the rights protected by the copyright law, 17 U.S.C. § 301; *see Baltimore Orioles,* 805 F.2d at 674. In defendants' motion for leave to supplement their reply, they argue that in light of the Seventh Circuit's recent decision in *Toney v. L'Oreal,* plaintiffs' claims are clearly preempted by the Copyright Act. While *Toney* does support defendants' contention that plaintiffs' claims are equivalent to a right under § 106 [3], fulfilling the second condition, it

---

**3.** "And because the exercise of the Carson

Products Company's rights to reproduce,

does not address the relevant issue in an analysis of whether the first condition for preemption applies to the Letos' claims.

The Seventh Circuit has held that an individual's *persona*—the element protected by a right of publicity claim—can fall within the subject matter of copyright. *Baltimore Orioles*, 805 F.2d at 675–76; *but see Brown v. Ames*, 201 F.3d 654, 658 (5th Cir.2000)(finding that an individual's *persona* is not a work of authorship that falls within the subject matter of copyright, and thus, right of publicity claims are not preempted by the Copyright Act); *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir.2001). For a *persona* to fall under the scope of copyright as defined by § 102, it must be "fixed" in a tangible medium of expression. 17 U.S.C. § 102. To be "fixed" in a tangible medium of expression a work must be embodied in a copy "by or under the authority of the author." 17 U.S.C. § 101. In *Baltimore Orioles*, the Seventh Circuit further explained the requirements for a work to be "fixed", using the facts from *Zacchini v. Scripps–Howard Broadcasting Co.*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977), to illustrate. 805 F.2d at 675–76 n. 22. The court stated that even if § 301 of the Copyright Act had existed when *Zacchini* was decided, the plaintiff's right of publicity claim against a television station for recording

and broadcasting his human cannonball act would not have been preempted unless he consented to the creation of the recording. *Id.* Without Zacchini's authority to embody his act in a copy, the work would not have been "fixed" or copyrightable, even though the station recorded it. *Id.*

In *Toney*, there was no question that the plaintiff consented to the creation of the photographs, which fixed her likeness in tangible form, because they were originally taken as part of a modeling contract. Thus, the Seventh Circuit did not analyze this issue in that case. When quoting the definition of "fixed" in *Toney*, the court omitted the language that requires the authority of the author because it was not relevant to the case. *Toney*, 384 F.3d 486, 490–91. However, it is relevant in the Letos' case. Defendants have not evidenced that the photographs were taken "by or under the authority" of the plaintiffs and, therefore, we cannot find that the works which plaintiffs seek to protect—their *personas*—are "fixed" and copyrightable.[4] As the doctrine of complete preemption does not apply to plaintiffs' state law claims, their motion to remand is granted. Of course, in the end, whether plaintiffs' claims are based on statutory or common law rights of publicity or the Copyright Act, they rest on whether there is a valid release for the photograph and the scope

---

adapt, publish, or display the photos would also infringe upon Toney's right to publicity in her likeness in photographic form, her publicity right is equivalent to the rights encompassed by copyright listed in § 106." *Toney*, 384 F.3d 486, 491–92.

4. In an attempt to show plaintiffs' consented to being photographed, defendants submitted a letter from Getty Images, the company which provided Thomson, Inc. with the photograph, warranting that a third party held a valid release for the picture of plaintiffs. Defendants also submitted the affidavit of Carter Crimm, Production Manager for Thomson, Inc., acknowledging Getty Images' declaration that there was a release. In response,

plaintiffs attached affidavits to their reply brief asserting that they never granted a release to Getty Images, Thomson Multimedia, Inc. (which allegedly licensed the photograph from Getty Images), nor any of the defendants. Plaintiffs' affidavits do not directly refute defendants' exhibits since defendants indicate it was a third-party which originally obtained the release, not Getty Images or any of the defendants. Regardless, defendants' affidavit confirming that Thomson, Inc. was told by Getty Images, who was told by a third-party, that there is a release for the photograph is not enough to establish plaintiffs' consent and preemption of their claims at this stage.

of that release. If there was a valid release, a factual matter to be determined in state court, that would impact the state court's disposition of the case: it should dismiss the case for lack of jurisdiction rather than enter judgment for defendants on the state law claims. The end result, however, would be the same—defendants would prevail.

In addition to remand of their case, plaintiffs seek an award of their attorneys' fees resulting from defendants' removal of their action. An order remanding a case may require payment of just costs and actual expenses, including attorneys' fees incurred as a result of removal. 28 U.S.C. § 1447(c). Plaintiffs correctly note that courts have held that bad faith on the part of the removing party is not necessary to award these fees. *See e.g., Tenner v. Zurek,* 168 F.3d 328, 329 (7th Cir.1999); *Suder v. Blue Circle, Inc.,* 116 F.3d 1351, 1352 (10th Cir.1997). Regardless, an award of attorneys' fees remains within the discretion of the court. As defendants provided a reasonable basis for removal, which presented a valid question regarding copyright preemption, we decline to award attorneys' fees. *See Castellanos v. U.S. Long Distance Corp.,* 928 F.Supp. 753, 757 (N.D.Ill.1996)(denying motion for attorneys' fees where case involved "complex issues" and removing party presented "substantial jurisdictional question.").

### CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand is granted. Therefore, we do not have jurisdiction to rule on defendants' motion to dismiss. Plaintiffs' request for attorneys' fees is denied.

### MEMORANDUM OPINION AND ORDER ON MOTION FOR RECONSIDERATION

Defendants, RCA Corporation, Wal-Mart Stores, Inc., and Sears, Roebuck and Co., brought this motion to reconsider the court's Memorandum Opinion and Order dated September 27, 2004, granting Dean and Rhonda Leto's motion to remand. Defendants argue that the court made an error of law in remanding the case. This assertion appears to be based on a misreading of our opinion, and so we will further explain our ruling.

As stated in our prior opinion, under the well-pleaded complaint rule a state law action can only be removed to federal court if Congress expressly allows it or a federal statute entirely displaces the state law cause of action through complete preemption. *See Beneficial National Bank v. Anderson,* 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). Defendants removed plaintiffs' state law action, which alleged right of publicity claims, on the basis that the Copyright Act completely preempted plaintiffs' claims. Neither the Supreme Court nor the Seventh Circuit has addressed the question of whether the Copyright Act completely preempts right of publicity claims. The Supreme Court has found only three categories of state law actions that are completely preempted by federal law—actions that fall under the Labor Management Relations Act, 29 U.S.C. § 185, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.,* and the National Bank Act, 12 U.S.C. §§ 85, 86. *See Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Beneficial National Bank,* 539 U.S. at 10–11, 123 S.Ct. 2058.

The Supreme Court addressed complete preemption by federal law most recently in *Beneficial National Bank.* In that case the Court held the National Bank Act completely preempts state law usury claims against national banks. It based its decision on prior interpretation of the National

Bank Act ("[T]he various provisions of §§ 85 and 86 'form a system of regulations ... [a]ll the parts [of which] are in harmony with each other and cover the entire subject,'"), the language of the Act (" '[i]n any view that can be taken of [§ 86], the power to supplement it by State legislation is conferred neither expressly nor by implication'"), and the nature of federally-chartered banks ("Uniform rules limiting the liability of national banks and prescribing exclusive remedies for their overcharges are an integral part of a banking system that needed protection from 'possible unfriendly State legislation.'"). *Beneficial National Bank,* 539 U.S. at 10–11, 123 S.Ct. 2058. Analogous circumstances do not support a finding that the Copyright Act completely preempts all state law right of publicity claims.

Courts have repeatedly stressed the extraordinary nature of complete preemption and its limited applicability. *See e.g., Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 399, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)("On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim ....' But a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated."); *Adkins v. Illinois Central Railroad Co.,* 326 F.3d 828, 835 (7th Cir.2003)("The discussions in our recent decisions ... and the Supreme Court's latest word on the question ... underscore how narrow the ill-named 'complete preemption' doctrine is."); *Vorhees v. Naper Aero Club, Inc.,* 272 F.3d 398, 403 (7th Cir.2001)("While these arguments set forth a strong case for federal preemption, they do not answer the more subtle question of whether we are dealing with so-called 'complete preemption' or its more ordinary cousin, 'conflict preemption.'"). Preemption is not complete preemption, and, therefore, rulings that establish federal preemption as a defense to certain state law claims do not establish federal preemption as a basis for removal from state court. *See Adkins,* 326 F.3d at 835.

Defendants rely on the Seventh Circuit's recent decision in *Toney v. L'Oreal,* 384 F.3d 486 (7th Cir.2004), to justify the removal of plaintiffs' actions. Yet, *Toney* does not hold that the Copyright Act completely preempts right of publicity claims. Complete preemption is not an issue in *Toney* because the case was removed to federal court on the basis of the plaintiff's Lanham Act claim, which provided federal question jurisdiction. *Id.* at 488. *Toney* merely reaffirms that the Copyright Act serves as a defense to certain right of publicity claims. *Id.* at 492. The plaintiff in *Toney* acknowledged in her complaint that the defendants held a valid copyright in photographs of her because she had authorized the use of her likeness in an advertising campaign. Her claim was that defendants had used the photographs beyond the terms of their contract. Under these circumstances, the court found that plaintiff's right of publicity claim was preempted by the Copyright Act, noting that a proper claim would have been for breach of contract.[1] Lacking any prece-

---

**1.** Even if the plaintiff in *Toney* had not pleaded a Lanham Act claim and the Seventh Circuit had allowed removal on the basis of copyright preemption, it is not clear that the ruling would justify removal in the Leto case. In *Toney,* the plaintiff states in her complaint that she consented to the photographs and, thus, there is a valid copyright. Plaintiff's own pleading establishes that the Copyright Act applies. Unlike the complaint in *Toney,* the Leto complaint alleges that they did not consent to be photographed and, therefore, under the allegation of the complaint the defendants could not hold a valid copyright.

dent from the Supreme Court or Seventh Circuit for the complete preemption of right of publicity claims by the Copyright Act, we declined to find that the Leto action was completely preempted and remanded their case to the state court.

Our prior opinion recognized that the Court of Appeals for the Second Circuit had reached a contrary conclusion regarding complete preemption by the Copyright Act. In *Briarpatch Limited v. Phoenix Pictures, Inc.,* 373 F.3d 296, 305 (2d Cir. 2004), the court found that "the district courts have jurisdiction over state law claims preempted by the Copyright Act." 373 F.3d at 305. Under *Briarpatch Limited,* preemption by the Copyright Act was no longer just a defense to state law claims to be determined by state courts, but was now equivalent to complete preemption, justifying removal of the action to federal courts. As we explained, even if we accepted the Second Circuit's reasoning, the Leto action would still be remanded. According to *Briarpatch Limited,* a state law claim is completely preempted by the Copyright Act when both conditions for preemption under the Act apply to the claim. *Id.* at 305. These conditions are: 1) the work giving rise to the claim falls within the subject matter of copyright, and 2) the rights protected by the state law claim are equivalent to one of the rights protected by the copyright law. 17 U.S.C. § 301.

Defendants argue that we erred in finding that the work giving rise to the Leto claims did not fall within the subject matter of copyright.[2] When determining whether the Copyright Act preempts right of publicity claims, courts have applied the language of the Act to the concepts of state law right of publicity claims, leading to quasi-metaphysical analysis. Courts

have repeatedly identified the "work" giving rise to a right of publicity claim as the plaintiff's *persona. See e.g., Baltimore Orioles, Inc. v. Major League Baseball Players Association,* 805 F.2d 663, 678 n. 26 (7th Cir.1986); *Brown v. Ames,* 201 F.3d 654, 658 (5th Cir.2000). *Persona* appears to serve as a catch-all term encompassing various types of "work" plaintiffs seek to protect with right of publicity claims, from a performance, as in *Baltimore Orioles,* to a likeness, as in *Toney.*

The Seventh Circuit has found that once a *persona* has been "fixed" in a tangible form, such as a photograph, it can fall within the scope of copyright. *Baltimore Orioles, Inc.,* 805 F.2d at 678 n. 26. Other circuits disagree, holding that a *persona* does not become copyrightable even if it is depicted in a form which is copyrightable. *See Brown v. Ames,* 201 F.3d 654, 658 (5th Cir.2000); *Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1003–04 (9th Cir. 2001). Regardless, the Seventh Circuit has stated that a *persona* does not automatically fall within the scope of copyright just because it has been captured in a tangible form. In *Baltimore Orioles,* the Seventh Circuit explained that in order for the work at issue in a right-of-publicity claim to be fixed, the plaintiff must authorize its placement in tangible form. The court used the facts from *Zacchini v. Scripps–Howard Broadcasting Co.,* 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977), to illustrate the point.

Take the case of *Zacchini v. Scripps–Howard Broadcasting Co.,* 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977), in which Hugo Zacchini sued a television station for violating his right of publicity by broadcasting the entirety of his human cannonball act. Zacchini was de-

---

**2.** It is important to note that even if defendants were correct, this would not call into question our holding, which is based on the finding that the Copyright Act does not completely preempt state law right of publicity claims.

cided before § 301(a) became effective, but let us suppose that the same case arises again today. Assuming that Zacchini did not videotape or otherwise record his performance, his human cannonball act would not be fixed in tangible form and could not be copyrighted. Nonetheless, because the work in which he asserts rights would not be fixed in a tangible medium of expression, his right of publicity in his performance would not be subject to preemption. Thus, if a television station were to broad cast his act, he still could sue successfully for violation of his right of publicity in his performance. Merely that the television station might videotape its telecast would not grant the station a copyright in the broadcast of Zacchini's performance or preempt Zacchini's right of publicity. To be "fixed" in tangible form, a work must be recorded "by or under the authority of the author," here Zacchini. *See* 17 U.S.C. § 101 (definition of "fixed"). Because Zacchini did not consent to the telecast, the broadcast could not be "fixed" for the purpose of copyrightability and Zacchini's right of publicity would not be subject to preemption.

*Baltimore Orioles,* 805 F.2d at 675–76 n. 22.

Thus, for Zacchini's work—his cannonball act—to be fixed, he needed to give authority for it to be recorded. The Seventh Circuit is not concerned with the authority of the cameraman who recorded the act on videotape or the television station that aired the tape. The court is focused on the authority of Zacchini, the author of the cannonball act.

The district court opinion in *Toney v. L'Oreal USA, Inc.,* 2002 WL 31455975 (N.D.Ill.2002) *aff'd* 384 F.3d 486 (7th Cir. 2004), a case heavily relied upon by defendants, also addressed this issue. As with the Letos, the plaintiff in *Toney* complained of her likeness, as captured in a photograph, being used for purposes beyond her consent. 2002 WL 31455975 at *1. In its analysis of whether the plaintiff's right-of-publicity claim was preempted by the Copyright Act, the court determined that the plaintiff's likeness was fixed for purposes of copyright because she "was photographed under her authority." *Id.* at *2. In *Toney,* the plaintiff was a model who authorized the embodiment of her likeness in the photograph; her complaint alleged that the photograph was later used beyond the terms of her agreement. *Id.* at *1. The *Toney* court's analysis of whether the relevant work was fixed for purposes of copyright had nothing to do with the authority of the photographer who took the pictures of the plaintiff. Rather, it hinged on whether the plaintiff gave her consent to be photographed. As noted in our prior opinion, the Seventh Circuit's decision did not address this issue because the parties did not raise an argument on appeal regarding the lower court's finding. *Toney,* 384 F.3d at 489.

Just as Zacchini's act would not be fixed without his authority to record it (regardless of whether the television station videotaped it without authority), the Letos' *personas* are not fixed for the purpose of copyright preemption unless they gave the authority for their likenesses to be recorded in tangible form. Unlike *Toney,* there is no evidence the Letos were photographed with their authority. Moreover, they do not claim any ownership rights in the photograph. Thus, even under the reasoning of *Briarpatch Limited,* plaintiffs' claims are not completely preempted, leaving it for the state court to determine whether defendants' preemption defense applies. *See Kings Choice Neckwear, Inc. v. DHL Airways, Inc.,* 2003 WL 22283814 at *2 (S.D.N.Y.2003)("[A]s a general matter, where there is no diversity jurisdiction, it is for a state court to decide wheth-

er federal law provides a defense to state-law claims by preempting those claims.").

*CONCLUSION*

For the foregoing reasons, defendants' motion to reconsider is denied. We will defer ruling on plaintiffs' alternative motion for § 1292(b) certification until plaintiffs have had an opportunity to respond, which they should do by November 3, 2004.