NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0112n.06

No. 12-1683

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 07, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KIRK LANAM, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| UNITED STATES OF AMERICA, | ) | MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

Before: BOGGS, SILER, and CLAY, Circuit Judges.

**SILER**, Circuit Judge. A jury convicted Defendant Kirk Lanam of three counts of computer intrusion in violation of 18 U.S.C. § 1030(a)(5)(A)(i) and the district court sentenced him to 21 months of incarceration and ordered restitution in the amount of $22,794. Lanam did not take a direct appeal but moved for collateral relief under 28 U.S.C. § 2255, arguing ineffective assistance of counsel and that restitution was improperly set. The district court denied Lanam's motion for relief. We **AFFIRM**.

**I.**

In 2005, Lanam was an information technology (IT) consultant working in suburban Detroit. In the previous year, one of Lanam's clients, Total Mortgage, Inc. ("Total"), ended its employment relationship with him. Subsequently, the computer system of another client of Lanam, Air Source One, Inc. ("Air Source"), was used to remotely attack Total's computer network, disrupting that company's telephone system and disabling its firewall. Lanam was indicted and convicted after a

trial, during which his defense counsel conceded that a computer attack had occurred, but argued that a third party was responsible. As a secondary defense, Lanam's attorney reminded the jury that each charged count required a finding of damages exceeding $5,000 from that count.

At sentencing, the district court adopted the presentence report's calculation and sentenced Lanam to 21 months of incarceration on each count, to be served concurrently. Lanam chose not to directly appeal his conviction but instead moved for collateral relief under 28 U.S.C. § 2255, alleging ineffective assistance of counsel. The district court held an evidentiary hearing on the § 2255 motion, but refused to permit Lanam to testify because he had not testified at trial. On appeal, this court found that decision to be in error, vacated the § 2255 judgment, and remanded with instructions for the district court to permit Lanam to testify in a limited manner regarding his ineffective-assistance-of-counsel claim. *Lanam v. United States*, 341 F. App'x 105, 107 (6th Cir. 2009).

On remand, the district court held a hearing where Lanam testified that his trial counsel was ineffective for not following through on several potential defense opportunities and for misunderstanding the government's burden with respect to the required $5,000-loss element of the charges. The district court ultimately denied Lanam's motion for relief but granted a certificate of appealability (COA) on the issue of ineffective assistance of counsel.

**II.**

Claims of ineffective assistance of counsel present mixed questions of law and fact and are reviewed *de novo* on appeal. *Mallett v. United States*, 334 F.3d 491, 497 (6th Cir. 2003). To establish ineffective assistance of counsel, a defendant must show: (1) his trial counsel's

performance was deficient, and (2) that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

## III.

### A.    Utilization of Potential Witnesses

Philip DeGrand, Lanam's employee, kept his own copies of time sheets he submitted to Lanam for payment. Lanam contends those records establish a partial alibi for him during the time that some of the computer intrusions occurred and that his attorney was ineffective for not obtaining them. The availability of those time sheets for use at trial, however, is called into question by Lanam's own testimony. He concedes that when DeGrand was initially asked after the trial to produce the records, he was unable to do so. Indeed, the time sheets were only discovered by DeGrand four or five weeks later when he came across them while searching for something else. Thus, it is far from clear that the records would have been available for trial even if Lanam's counsel had requested them from DeGrand. Furthermore, the alibi value of the time sheets is limited: they related to only two of the five attacks, and an alibi defense would require an assumption that DeGrand was with Lanam *at all times* during the documented work periods, as the computer attacks took only minutes to conduct.

Next, Lanam contends that his attorney was ineffective for failing to obtain the testimony of James Harb, a former business associate of Timothy Goslin, the owner of Total. Lanam submits that Harb's testimony would have undercut the damage amounts offered by Goslin. Harb, however, had no personal knowledge of Total's revenues at the time of the computer attacks. Additionally,

his objectivity as a witness regarding Goslin's losses was limited by the pair's business disputes and subsequent legal problems.

Lanam's final claim relating to trial preparation and execution concerns his attorney's use of Doug Dean, a computer forensic analyst. Lanam contends that his counsel should have directed Dean to conduct a more thorough analysis of Air Source's cloned computer server in order to see if the intruder's identity could be determined. Additionally, Lanam believes that Dean could have been used at trial to rebut the amount of damage the government claimed as related to the intrusions.

On a § 2255 motion, however, the standard is not whether trial counsel for the defense could have done more, but whether he acted reasonably. Before trial, Lanam's attorney hired a computer expert and had him examine the government's evidence, including the computer records and the amounts claimed in damages by the victim companies. Unfortunately for Lanam, the defense expert's pre-trial report confirmed the government's theory of how the intrusions took place. Furthermore, Lanam's attorney testified that when he asked the defense expert about the damage amounts put forward by the government, the expert indicated that they were "reasonable." Even so, Lanam's defense counsel followed through by conducting a significant cross-examination of the victim companies' representatives about their repair invoices as well as other damage amounts advanced by the government.

Having been convicted at trial, Lanam now points to several ways his attorney could have been more effective. The Sixth Amendment, however, guarantees "reasonable competence, not perfect litigation." *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004). While in retrospect it appears that certain additional steps could have been taken by Lanam's attorney both before and during trial,

the failure to take those steps in this instance does not take his counsel's performance outside the "wide range of reasonable professional assistance" that the Constitution requires. *Strickland*, 466 U.S. at 689.

Moreover, even if we found that defense counsel's utilization of witnesses at trial was deficient, the requirement of prejudice to Lanam must still be established. The case against Lanam, although circumstantial, was a strong one. He alone was the common connection between the victim company, Total, and the Air Source computer system used to conduct the attack. Additionally, the FBI computer expert testified at length about how the digital forensic evidence pointed only to Lanam. Given the strength of the government's case, the alleged deficiencies Lanam raises fall short of creating a "reasonable probability" of a different outcome at his trial.

## B. Trial Counsel's Strategy

At trial, Lanam's attorney primarily pursued a defense based on third-party culpability. He also pursued an alternative theory – that the loss amount suffered on each count was less than the $5,000 amount required by the statute. Lanam now claims his trial attorney was ineffective in presenting this alternative defense. While Lanam acknowledges that his trial attorney pursued the alternative theory "in a limited fashion" through cross-examination and in his closing argument, this was insufficient in Lanam's view to be considered effective.

In analyzing the strategic decision made by Lanam's trial counsel not to pursue more vigorously the "limited loss" defense, we assess whether the attorney's performance "was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Here, Lanam's attorney testified during the initial § 2255 hearing that he faced a strategic dilemma. First and foremost, he was

arguing that his client was not responsible for these computer attacks. However, if the jury believed his client had committed the attacks, he had to simultaneously argue that the damages were less than the government asserted. Lanam's attorney knew that the more time he spent on the "limited loss" defense, the more chance he would confuse the jury and jeopardize his efforts to keep them focused on his primary third-party culpability defense. Dealing with that strategic dilemma in the way that he did was a rational choice for Lanam's trial attorney. Indeed, it was all the more understandable given Lanam's persistent statements of innocence to his trial attorney, and the fact that the defense computer expert had undermined the "limited loss" defense by describing the victim's estimate of damages as "reasonable."

## IV.

The final area where Lanam asserts an ineffective-assistance claim involves his trial attorney's misinterpretation of the computer-intrusion statute's loss calculation. Lanam contends that his trial attorney advised him that the government would be required to prove that $5,000 in damages resulted from *each* computer invasion that was charged. However, the relevant portion of 18 U.S.C. § 1030(a) requires only that the offending conduct cause

> [a] loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) *aggregating* at least $5,000 in value . . . .

18 U.S.C. § 1030(a)(5)(B)(i) (2006) (emphasis added). In other words, the statute requires only a total loss amount of $5,000, which can be aggregated based on the conduct charged along with any relevant course of conduct during a 1-year period.[1]

Lanam now argues that had he known about the statute's aggregating provision (which had the effect of reducing the government's proof of damages requirement), he would have accepted an alleged offer by the government to plead guilty to a misdemeanor. "During plea negotiations defendants are entitled to the effective assistance of competent counsel,*" see Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012)(internal quotation marks omitted), and that assistance is evaluated using the two-part *Strickland* test. *Id.* Under the second *Strickland* test, when a plea offer was rejected, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)." *Id.* at 1385.

In this case, since Lanam *was* incorrectly advised by his attorney regarding the provision for aggregation in the loss element of the statute, our analysis turns on the question of prejudice. Lanam must show there is a reasonable probability he would have accepted the misdemeanor offer if he had been advised the losses could be aggregated. Several factors weigh against such a finding. First, there is only limited evidence in the record that a plea offer was ever formally made to Lanam. The

---

[1]The correct loss interpretation of the statute appears to have eluded government counsel at trial as well as Lanam's attorney. However, to the extent that the government attempted to prove and the jury had to find a $5,000 loss on *each* count, that redounded to Lanam's benefit at trial not his detriment. On appeal, Lanam conceded that damages may be aggregated to satisfy the $5,000 loss amount in the statute.

government contends that it was "merely inquiring whether Lanam would be willing to discuss terms of a plea." This position is bolstered by the lack of a written plea offer and the diverging claims as to whether the government had mentioned a plea to one misdemeanor count or two. Second, Lanam presents little evidence he was ready to plead guilty if only he had been properly advised on the loss requirement. His trial attorney testified that Lanam seemed uninterested when the misdemeanor plea was mentioned:

> His response was essentially words to the effect that *had* he committed this offense that would be a pretty good deal. So he declined the misdemeanor offer . . . on the basis that he was not guilty. (emphasis added)

Furthermore, there is no evidence that Lanam's attorney advised him to forgo a guilty plea and proceed to trial. Finally, even when Lanam himself testified on this point, his answer was noncommittal:

> Q.   Would you have accepted a misdemeanor plea had you known that the losses could be aggregated that way?
>
> A.   Quite possibly, yes.

Lanam's "possibly" response, in the context of his attorney's testimony, falls below the "reasonable probability" threshold necessary for establishing prejudice.

## V.

The district court did not include the calculation of restitution under its COA. Furthermore, since Lanam filed no direct appeal in this case, he did not raise the restitution amount with this court outside of his present § 2255 collateral attack. As a result, under the procedural-default doctrine, Lanam is not entitled to review by this court on that issue. *See, e.g.*, *Smullen v. United States*, 94 F.3d 20, 25-26 (1st Cir. 1996); *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995).

## VI.

The professional assistance Lanam's attorney provided at trial was within the wide range considered "reasonable." Furthermore, to the extent that his counsel was deficient, the record fails to demonstrate that Lanam was prejudiced as a result.

**AFFIRMED**.